IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
JUN 19 2009
J. T. NOBLIN, CLERK
BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) CIVIL ACTION NO. 1:09cv376LG-RHW |
| v. | ) COMPLAINT and |
| INDIGO INVESTMENTS, LLC, EDWARD L. HAMILTON, and BARBARA A. HAMILTON, | ) JURY DEMAND |
| Defendants. | ) |

The United States of America ("United States") alleges as follows:

## NATURE OF ACTION

1. This action is brought by the United States to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq.* (the "Fair Housing Act"). This action is brought on behalf of Maggie Johnson and Jermille Johnson pursuant to 42 U.S.C. § 3612(o), and pursuant to 42 U.S.C. § 3614(a).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3612(o) and 3614(a).

3. Venue is proper under 42 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the United States' claims occurred in this judicial district.

## PARTIES AND PROPERTY

4. At all times relevant to this action, Defendant Indigo Investments, LLC ("Indigo") was the owner of Homestead Mobile Home Village ("Homestead"), a ninety-eight lot mobile home park located at 19061 Highway 53 in Gulfport, Mississippi. Indigo leased lots at Homestead to the U.S. Department of Homeland Security, Office of Federal Emergency Management Assistance ("FEMA") for use by persons displaced by Hurricane Katrina.

5. At all times relevant to this action, Defendants Edward L. Hamilton and Barbara A. Hamilton ("the Hamiltons") acted as agents for Indigo, serving as on-site property managers at Homestead. The Hamiltons were responsible for day-to-day operations at Homestead. The Hamiltons worked out of, and lived in, an office trailer located on Lot 1 at Homestead.

6. The spaces available for rent that are owned and/or managed by the defendants are dwellings within the meaning of the Fair Housing Act. 42 U.S.C. § 3602(b).

## FACTUAL ALLEGATIONS

7. Maggie Johnson and Jermille Johnson ("the Johnsons") are black. At all times relevant to this action, they resided with their five minor children, all of whom are black.

8. In August 2005, the Johnsons and their children were displaced from their home by Hurricane Katrina.

9. On or around November 16, 2005, Maggie Johnson signed a lease with FEMA for a mobile home located at Lot 87 at Homestead. Approximately two days later, the Johnsons and their children moved into Homestead.

10. At all times relevant to this action, the Hamiltons were responsible for enforcing Homestead's park rules for all residents of Homestead. At their discretion, the Hamiltons issued written notices to residents for violation(s) of Homestead's park rules. The written notices contained the language, "[a]fter received three written warnings, next is eviction."

11. Approximately one week after the Johnsons moved into Homestead, sometime in late November 2005, Barbara Hamilton came to their mobile home and accused one of the Johnsons' sons of putting trash in the wrong dumpster. Barbara Hamilton told Maggie Johnson that she could evict them for putting trash in the wrong dumpster.

12. Twice on March 3, 2006, when Maggie Johnson drove past the office trailer, Barbara Hamilton approached Mrs. Johnson's car, accusing her of speeding. Mrs. Johnson was not speeding.

13. On March 4, 2006, the Johnsons invited family members to their home for a barbeque. All the guests were black. When one of the guests pulled her car into Homestead, a group of white people approached her car from the office trailer, pointed at her, and yelled racial slurs and other words indicating they wanted her to leave. When another guest pulled her car into Homestead, the Hamiltons stopped her near the office trailer, cursed at her, and accused her of speeding. This guest left Homestead and returned a short while later. When she returned, the Hamiltons again stopped her near the office trailer, directed racial slurs toward her, and Barbara Hamilton made a profane gesture toward her.

14. On March 8, 2006, Edward Hamilton delivered a thirty day eviction notice to the Johnsons for failing to follow Homestead's park rules. Attached to the eviction notice were three written notices, all dated March 4, 2006, and all alleging that the Johnsons' guests had failed to follow Homestead's park rules.

15. The defendants filed an eviction action against Maggie Johnson. On or around April 25, 2006, a hearing was held and the court dismissed the eviction action against Mrs. Johnson with prejudice.

16. During the time that the Johnsons lived at Homestead, at least three other households with a black resident received an eviction notice based on two or three written notices.

17. During the time that the Johnsons lived at Homestead, at least four white residents who had received at least three written notices did not receive eviction notices.

18. Beginning on or around March 8, 2006, and continuing until the Johnsons moved out of Homestead on or around May 26, 2006, Edward Hamilton harassed and intimidated the Johnsons by, among other things, frequently driving by and stopping in front of their mobile home in the evening, and staring at their mobile home in a way that made Jermille Johnson fear for his family's safety. Mr. Hamilton also, on one occasion, drove toward Mrs. Johnson in a deliberate manner while she was driving within Homestead, nearly hitting her vehicle.

19. The Johnsons moved out of Homestead on or around May 26, 2006, because the eviction notice, the eviction proceeding, and Mr. Hamilton's conduct, as discussed in paragraph 18, above, made them feel unsafe and at risk.

20. During the time that the Johnsons lived at Homestead, Edward Hamilton made statements to other tenants that indicated he did not want blacks living at Homestead.

21. Sometime after March 8, 2006, the Johnsons sought help from the Gulf Coast Fair Housing Center ("GCFHC"), a private, non-profit fair housing organization, in relation to their tenancy at Homestead. Thereafter, GCFHC conducted an investigation to determine the defendants' compliance with the Fair Housing Act. As part of its investigation, GCFHC conducted one paired test to evaluate the defendants' compliance with the Fair Housing Act. Testers are persons who, without the intent to rent or buy a dwelling, seek information about the availability of dwellings to determine whether discriminatory housing practices are occurring. GCFHC's paired test revealed that a white prospective tenant was treated more favorably than a black prospective tenant, including the white tester being told that a rental unit was available, while the black tester was told no rental units were available.

## HUD ADMINISTRATIVE PROCESS

22. On or about May 4, 2006, the Johnsons filed a timely Fair Housing Act complaint with the United States Department of Housing and Urban Development ("HUD"), alleging that the Hamiltons had engaged in housing discrimination on the basis of race in violation of 42 U.S.C. § 3604(b). The Johnsons' complaint was amended three times: once in May 2006 and once in November 2008 to name additional respondents, and once in January 2008 to add a claim under 42 U.S.C. § 3604(a).

23. Pursuant to 42 U.S.C. §§ 3610(a) and (b), the Secretary of HUD conducted and completed an investigation of the complaint, attempted conciliation without success, and

prepared a final investigative report. Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that illegal discriminatory housing practices had occurred. Therefore, on April 30, 2009, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging certain respondents with engaging in discriminatory practices, based on race or color, in violation of the Fair Housing Act, 42 U.S.C. §§ 3604(a), 3604(b), and 3617.

24. On May 20, 2009, one of the respondents named in the HUD Charge of Discrimination elected to have the claims asserted in the HUD Charge resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

25. On May 21, 2009, the Administrative Law Judge issued a Notice of Election and Judicial Determination and terminated the administrative proceeding on the Johnsons' complaint.

26. Following this Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action, pursuant to 42 U.S.C. § 3612(o).

## COUNT I

27. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-26, above.

28. By the actions set forth above, the defendants have discriminated against the Johnsons by:

    a. Denying housing or making housing unavailable because of race or color, in violation of 42 U.S.C. § 3604(a);

    b. Discriminating in the terms, conditions, or privileges of rental of a dwelling because of race or color, in violation of 42 U.S.C. § 3604(b); and

  c. Coercing, intimidating, threatening, or interfering with the exercise or enjoyment of any right granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

29. The Johnsons are "aggrieved persons" within the meaning of 42 U.S.C. § 3602(i), and suffered injuries as a result of the defendants' discriminatory conduct.

30. The defendants' actions, as set forth above, were intentional, willful and taken in disregard of the rights of the Johnsons.

## COUNT II

31. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-30, above.

32. The defendants' discrimination on the basis of race or color, as described above, constitutes:

  a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*; or

  b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, which raises an issue of general public importance.

33. In addition to the Johnsons, there may be other victims of the defendants' discriminatory conduct who are "aggrieved persons" within the meaning of 42 U.S.C. § 3602(i), and suffered injuries as a result of the defendants' discriminatory conduct.

34. The defendants' actions, as set forth above, were intentional, willful and taken in disregard of the rights of others.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that the Court enter an order that:

1. Declares that the defendants' conduct as alleged herein violates the Fair Housing Act, as amended, 42 U.S.C. §§ 3601, *et seq.*;

2. Enjoins the defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them from discriminating on the basis of race or color, in violation of the Fair Housing Act, as amended, 42 U.S.C. §§ 3601, *et seq.*;

3. Awards monetary damages to the Johnsons and to each person injured by the defendants' discriminatory conduct, pursuant to 42 U.S.C. §§ 3612(o)(3) and 42 U.S.C. § 3614(d)(1)(B); and

4. Assesses civil penalties against the defendants to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C).

The United States prays for such additional relief as the interests of justice may require.

Dated: June 18, 2009

Respectfully submitted,

ERIC H. HOLDER, JR.
Attorney General

STAN HARRIS
Acting United States Attorney

*/s/ Loretta King*
LORETTA KING
Acting Assistant Attorney General

*/s/ Mitzi Dease Paige (by EMR)*
MITZI DEASE PAIGE
Assistant United States Attorney
188 E. Capitol Street, Suite 500
Jackson, Mississippi 39201
(601) 973-2840
(Mississippi Bar No. 6014)

*/s/ Donna M. Murphy*
DONNA M. MURPHY
Acting Chief

*/s/ Erin Meehan Richmond*
MICHAEL S. MAURER
Deputy Chief
ERIN MEEHAN RICHMOND
Attorney
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.
Northwestern Building, Seventh Floor
Washington, D.C. 20530
(202) 514-4713
(202) 514-1116 (fax)
Michael.Maurer@usdoj.gov
Erin.Richmond@usdoj.gov