IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. 1:09cv376LG-RHW |
| ) | |
| v. ) | |
| ) | |
| INDIGO INVESTMENTS, LLC, ) | |
| EDWARD L. HAMILTON, ) | |
| and BARBARA A. HAMILTON, ) | |
| ) | |
| Defendants. ) | |

### CONSENT DECREE

### I.  INTRODUCTION

1. This action was filed by the United States to enforce the provisions of the Fair Housing Act, 42 U.S.C. §§ 3601-3619. The United States alleges that Defendants Indigo Investments, LLC ("Indigo"), a limited liability company that owned Homestead Mobile Home Village in Gulfport, Mississippi, and Defendants Edward L. Hamilton and Barbara A. Hamilton (together, "the Hamiltons," and collectively with Indigo, "the Defendants"), the former managers of Homestead Mobile Home Village, engaged in discrimination on the basis of race or color in violation of the Fair Housing Act.

2. Specifically, the United States alleges that the Defendants engaged in housing practices that discriminate on the basis of race or color, including:

   a. Disparately enforcing Homestead Mobile Home Village's rules against African Americans and interracial households as compared to white households;

1

    b. Accusing African Americans and interracial households of violating park rules when they had not done so;

    c. Enforcing non-existent rules against African Americans and interracial households;

    d. Disparately implementing Homestead Mobile Home Village's eviction policy against African Americans and interracial households as compared to white households; and

    e. Engaging in threatening behavior toward African Americans and interracial households.

  3. The United States alleges that through this conduct the Defendants:

    a. Discriminated by making unavailable or denying dwellings to persons because of race or color, in violation of 42 U.S.C. § 3604(a);

    b. Discriminated against persons in the terms, conditions, or privileges of rental, or in the provision of services or facilities in connection therewith, because of race or color, in violation of 42 U.S.C. § 3604(b); and

    c. Coerced, intimidated, threatened, or interfered with the exercise or enjoyment of a right granted or protected by the Fair Housing Act in violation of 42 U.S.C. § 3617;

  4. The United States alleges that the Defendants' conduct as described in paragraphs 2 and 3 above constitutes a pattern or practice of discrimination on the basis of race or color, or a denial to a group of persons of rights granted by the Fair Housing Act raising an issue of general public importance, in violation of 42 U.S.C. § 3614.

5. The Defendants, Indigo and the Hamiltons, deny that they engaged in discrimination in violation of the Fair Housing Act as set forth in paragraphs 1 through 4, above.

6. The United States and the Defendants have agreed that, to avoid protracted and costly litigation of a contested claim, this controversy should be resolved without a trial. Therefore, the parties consent to the entry of this Consent Decree.

ACCORDINGLY, it is hereby **ADJUDGED, ORDERED and DECREED:**

## II. GENERAL INJUNCTION

7. Indigo, its members, officers, agents, representatives, employees, successors and assigns are enjoined, with respect to the rental of dwellings, from:

    a. Refusing to rent a dwelling, refusing or failing to provide or offer information about a dwelling, refusing to negotiate for the rental of a dwelling, or otherwise making unavailable or denying a dwelling to any person because of race or color;

    b. Discriminating against any person in the terms, conditions, or privileges of renting a dwelling, or in the provision of services or facilities in connection therewith, because of race or color; or

    c. Coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided and encouraged any other person in the exercise or enjoyment of, any right granted by the Fair Housing Act.

8. The Hamiltons are enjoined from having any involvement in the rental real estate business, including owning, wholly or in part, operating, consulting, managing, staffing, participating in, working in (whether paid or unpaid), or otherwise having any involvement in ownership or management of rental dwellings.

### III. PROVISIONS REGARDING INDIGO'S CURRENT OR FUTURE INTERESTS IN RENTAL DWELLINGS

9. Indigo represents that it currently has no direct or indirect ownership, management, or other financial interest, in whole or in part, in any rental dwellings. Indigo further represents that it currently has no plans to acquire any such interest in rental dwellings. In the event that Indigo acquires any such interest in rental dwellings, Indigo shall:

   a. Implement a Nondiscrimination Policy regarding the rental of dwellings. The text of the Nondiscrimination Policy shall be in the form of Appendix B hereto, with the name of the property in which Indigo has an interest inserted into the space that says: "insert name of property." Indigo shall provide the United States with a copy of the completed Nondiscrimination Policy within fifteen (15) days after the date on which Indigo acquires its interest.[1] Indigo shall provide to the United States notification and documentation of any change in any Nondiscrimination Policy no later than fifteen (15) days after such change.

   b. Take the following steps to notify the public of the Nondiscrimination Policy within thirty (30) days after the date on which Indigo acquires its interest:

      i. Post and prominently display in any rental and management offices in locations that are easily visible to residents and prospective residents, and at all other places on said properties in which announcements or vacancies are posted, a sign no smaller than ten inches by fourteen inches (10" x 14") indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that includes the content

---

[1] All documents or other communications required by this Consent Decree to be sent to counsel for the United States shall be sent by commercial (non-USPS) overnight delivery service addressed as follows, or as otherwise directed by the United States: Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 1800 G Street NW, Suite 7002, Washington, DC, 20006, Attn: DJ 175-41-216.

required by 24 C.F.R. § 110.25 and otherwise comports with 24 C.F.R. Part 110 will satisfy this requirement.

      ii.      Cause to be included the words "Equal Housing Opportunity" and/or the fair housing logo in all advertising for rental dwellings, including in newspapers, flyers, handouts, telephone directories and other written materials; on radio, television, Internet, or other media advertisements or broadcasts; and on all billboards, signs, pamphlets, brochures and other promotional literature. The words and/or logo shall be prominently placed and easily readable.

      iii.      Cause to be included the following phrase in boldface type in all applications and all lease agreements used for rental dwellings, using letters of equal or greater size to those of the text in the body of the document: "We are an equal housing opportunity provider. We do not discriminate on the basis of race, color, sex, national origin, religion, disability or familial status (having children under age 18)."

    c.    Distribute a copy of this policy and this Consent Decree to all of its members, agents, representatives, employees, and/or anyone acting under Indigo's direction, to all other parties or individuals with any interest in any rental dwelling in which Indigo has any interest as described in paragraph 9 above, and to any parties or individuals who have any responsibility for showing, renting, or managing any rental dwellings in which Indigo has any interest as described in paragraph 9 above, including, but not limited to, tenant rule enforcement and eviction decisions. Indigo shall distribute these copies within fifteen (15) days of providing to the United States a copy of the Nondiscrimination Policy. Indigo shall also provide a copy of this Consent Decree and the Nondiscrimination Policy to all such individuals or parties who are newly hired or otherwise engaged, and to all individuals or parties that newly obtain any interest

in any rental dwelling in which Indigo has any interest as described in paragraph 9 above, and to all individuals or parties with any existing interest in any rental dwelling in which Indigo acquires any interest as described in paragraph 9 above, within ten (10) days after that person's employment, engagement, agency, or the new interest in the rental dwelling begins. Indigo shall secure a signed statement, in a form substantially conforming to Appendix C hereto, from each such individual or party acknowledging that he, she, or it has received and read and understands this Consent Decree and the Nondiscrimination Policy, has had the opportunity to have questions about the Consent Decree and Nondiscrimination Policy answered, and agrees to abide by the relevant provisions of the Consent Decree and the Nondiscrimination Policy. Any questions shall be answered by Indigo or its counsel. Indigo shall review the Nondiscrimination Policy and this Consent Decree with each such individual or party on an annual basis thereafter.

### IV. FAIR HOUSING TRAINING

10. Indigo represents that it currently has no direct or indirect ownership, management, or other financial interest, in whole or in part, in any rental dwellings. Indigo further represents that it currently has no plans to acquire any such interest in rental dwellings. In the event that Indigo acquires any such interest in rental dwellings, Indigo's members shall undergo in-person training on the Fair Housing Act, with specific emphasis on discrimination on the basis of race or color, no later than ninety (90) days after the date on which Indigo acquires its interest. In addition, any and all agents, employees, or other parties or individuals who have any responsibility for showing, renting, or managing any rental dwellings in which Indigo acquires any interest as described in paragraph 9 above, including, but not limited to, tenant rule enforcement and eviction decisions, shall also undergo in-person training on the Fair Housing Act, with specific emphasis on discrimination on the basis of race or color, no later than sixty

(60) days after the date on which Indigo acquires its interest. These trainings shall be conducted by an independent, qualified third party, approved by the United States, and any expenses associated with these trainings shall be borne by Indigo. Indigo shall obtain from the trainer a certification of attendance for each individual or party trained, in a form substantially equivalent to Appendix A hereto. Indigo shall also obtain copies of any instructional materials and handouts used in the trainings.

## V. REPORTING AND RECORDKEEPING

11. Indigo represents that it currently has no direct or indirect ownership, management, or other financial interest, in whole or in part, in any rental dwellings. Indigo further represents that it currently has no plans to acquire any such interest in rental dwellings. In the event that Indigo acquires any such interest in rental dwellings, Indigo shall:

    a. Within one-hundred and twenty (120) days after the date on which Indigo acquires its interest, and every six (6) months thereafter, submit to the United States a compliance report as provided by this paragraph. The compliance reports shall include:

        i. A statement specifying the nature of Indigo's interest in each rental dwelling in which Indigo acquires any interest as described in paragraph 9 above, and a copy of the documents memorializing the acquisition of any new interest;

        ii. The number of individual rental dwelling units at each such property;

        iii. The names of any existing tenants at each such property;

        iv. The race of each tenant at each such property, based on the good faith observation of Indigo or its employees or agents;

    v.  Copies of any advertisements, pamphlets, brochures, or other promotional literature concerning the rental dwelling;

    vi.  Photographs of each location in which fair housing signs are posted, and copies of all promotional material, applications, and lease agreements containing nondiscrimination language, referred to in paragraph 9(b) above;

    vii.  The signed statements for each individual or party as referred to in paragraph 9(c) above;

    viii.  The training certifications for each individual or party, and copies of any instructional materials and handouts used in fair housing trainings, as referred to in paragraph 10 above; and

    ix.  A written statement detailing all of Indigo's efforts during the reporting period to ensure compliance with its Nondiscrimination Policy and this Consent Decree.

  b.  Notify counsel for the United States, in writing, within fifteen (15) days of receipt of any housing discrimination complaint on the basis of race or color at any rental dwelling in which Indigo acquires any interest as described in paragraph 9 above. Such notification shall include the date of the complaint, a copy of any written complaint or a description of the verbal complaint, and contact information (including mailing addresses and daytime and evening telephone numbers) for the complaining party. Within fifteen (15) days of the resolution of any such complaint, Indigo shall notify counsel for the United States, in writing, of the details of the resolution.

  c.  Notify counsel for the United States of its intent to acquire any interest as described in paragraph 9 above in writing at least thirty (30) days before completion of the

8

transaction by which it acquires the interest. The notification will include the name and address of the rental dwelling in which Indigo will acquire a direct or indirect interest and the identity of the manager of the rental dwelling.

    d. Preserve all records that are the source of, contain, or relate to any of the information pertinent to their obligations under this Consent Decree and any other documents related to the rental or management of units at any rental dwelling in which Indigo acquires any interest as described in paragraph 9 above. Such documents include, but are not limited to: applications; leases; tenant files; occupancy lists; rules, policies and procedures; written warnings or other violation notices; thirty-day notices and/or eviction notices; and unit availability logs. Upon reasonable notice to Indigo, representatives of the United States shall be permitted to inspect and copy any records preserved pursuant to this paragraph and inspect Indigo's offices at any and all reasonable times so as to determine compliance with this Consent Decree; provided, however, that the United States shall endeavor to minimize any inconvenience to Indigo from such inspections.

### VI. COMPLIANCE TESTING

12. Indigo represents that it currently has no direct or indirect ownership, management, or other financial interest, in whole or in part, in any rental dwellings. Indigo further represents that it currently has no plans to acquire any such interest in rental dwellings. In the event that Indigo acquires any such interest in rental dwellings, the United States may take steps to monitor Indigo's compliance with this Consent Decree, including, but not limited to, conducting fair housing tests at rental dwellings in which Indigo has any direct or indirect ownership, management, or other financial interest.

## VII.   COMPENSATION OF AGGRIEVED PERSONS

13.   Defendant Indigo, on its behalf and that of the Hamiltons, shall pay a total sum of forty-five thousand dollars ($45,000.00) in monetary damages, in two installments, to compensate persons whom the United States has identified as aggrieved persons. A list of the twelve persons whom the United States identifies as aggrieved persons and the total amount to be paid to each person is attached hereto as Appendix D.

14.   Within ninety days (90) days of the entry of this Consent Decree, the Defendants shall send via overnight courier to counsel for the United States a cashier's check made payable to the "United States Treasury" for thirty thousand dollars ($30,000.00).

15.   By no later than December 29, 2011, the Defendants shall send via overnight courier to counsel for the United States a cashier's check made payable to the "United States Treasury" for fifteen thousand dollars ($15,000.00).

16.   Upon receipt by counsel for the United States of the check referenced in paragraph 14, above, from the Defendants, and the original signed release in the form of Appendix E attached hereto from each aggrieved person, counsel for the United States shall issue a check to each aggrieved person and deliver the original signed release to counsel for the Defendants. No aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix E.

17.   Upon receipt by counsel for the United States of the check referenced in paragraph 15, above, from the Defendants, counsel for the United States shall issue an additional check to each aggrieved person.

18.   The compensation required to be paid pursuant to paragraphs 14 and 15, above, is alleged by the United States to be a debt for willful and malicious injury of aggrieved persons by the Defendants, within the meaning of 11 U.S.C. § 523(a)(6). Defendants shall not seek to

10

discharge any part of this debt in bankruptcy. By these payments, the Defendants make no admission of liability.

### VIII. CIVIL PENALTY

19. By no later than December 29, 2011, the Defendants shall pay five thousand dollars ($5,000.00) to the United States as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C). By this payment, the Defendants make no admission of liability under 42 U.S.C. § 3614(d)(1)(C). This payment shall be delivered to counsel for the United States in the form of a cashier's check payable to the "United States Treasury."

20. The civil penalty required to be paid pursuant to paragraph 19 above is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States, within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss. By this payment, the Defendants make no admission of liability under 42 U.S.C. § 3614(d)(1)(C). Defendants shall not seek to discharge any part of this debt in bankruptcy.

### IX. SCOPE AND DURATION OF CONSENT DECREE

21. The provisions of this Consent Decree shall apply to all of the Defendants' members, officers, agents, representatives, employees, successors and assigns.

22. This Consent Decree shall remain in effect for three (3) years after the date of its entry.

23. The Court shall retain jurisdiction for the duration of this Consent Decree to enforce its terms, after which time the case shall be dismissed with prejudice. The United States may move the Court to extend the duration of the Consent Decree in the interests of justice.

## X.   REMEDIES FOR NON-COMPLIANCE

24.   If the Defendants fail to make any payment within the time or in the amounts set forth in paragraphs 14, 15, and/or 19, above, a judgment shall be entered immediately, without further notice or hearing, against the Defendants in the aggregate amount of the following:

   a.   The outstanding balance owed under the terms of paragraphs 14, 15 and/or 19 of this Consent Decree; and

   b.   Twenty-five thousand dollars ($25,000) in total liquidated damages, payable to the "United States Treasury" for purposes consistent with this Consent Decree

25.   If judgment is entered pursuant to paragraph 24, above, the judgment will accrue post-judgment interest in the manner set forth in 28 U.S.C. § 1961, and the parties agree that the United States is entitled to enforce collection of that judgment by all legal means available, including, but not limited to, filing liens against the Defendants' non-exempt real and personal property, garnishing the Defendants' wages and bank accounts, and levying against the Defendants' non-exempt real and personal property. These actions shall be in addition to any other remedies the Court may impose pursuant to paragraph 26 of this Consent Decree, below.

26.   The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event the United States contends that there has been a failure by any of the Defendants, whether willful or otherwise, to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

## XI.  TIME FOR PERFORMANCE

27.  Any time limits for performance imposed by this Consent Decree may be extended by mutual written agreement of the parties. The other provisions of this Consent Decree may be modified by written agreement of the parties or by motion to the Court. If the modification is by written agreement of the parties, then such modification will be effective upon filing of the written agreement with the Court, and shall remain in effect for the duration of the Consent Decree or until such time as the Court indicates through written order that it has not approved the modification.

## XII. COSTS OF LITIGATION

28. Each party to this litigation will bear its own costs and attorneys' fees associated with this litigation.

**IT IS SO ORDERED**, this 18th day of January, 2011.

_____
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

By their signatures below, the parties consent to the entry of this Consent Decree:

For the United States:

Dated: January 7, 2011

ERIC HOLDER
Attorney General

By: _____
MITZI DEASE PAIGE (MSB #6014)
Assistant United States Attorney
188 E. Capitol Street, Suite 500
Jackson, Mississippi 39201
(601) 973-2840 (Office)
601-965-4480 (Fax)
E-Mail: Mitzi.Paige@usdoj.gov

THOMAS E. PEREZ
Assistant Attorney General

_____
STEVEN H. ROSENBAUM
Chief
MICHAEL S. MAURER
Deputy Chief
CHRISTOPHER J. FREGIATO
JENNIFER L. MARANZANO
Attorneys
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.
Northwestern Building, Seventh Floor
Washington, D.C. 20530
(202) 514-4713
(202) 514-1116 (fax)
Michael.Maurer@usdoj.gov
Christopher.Fregiato@usdoj.gov
Jennifer.Maranzano@usdoj.gov
Attorneys for Plaintiff United States
of America

14

For Defendants Indigo Investments, LLC, Edward L. Hamilton, and Barbara A. Hamilton:

Dated: __Jan 10th__, 2011

*[signature]*

TIM C. HOLLEMAN
D. JEFFREY WHITE
Boyce Holleman & Associates
1720 23rd Avenue/Boyce Holleman Boulevard
Gulfport, MS 39501
(228) 863-3142
(228) 863-9829 (fax)
tim@boyceholleman.com
jeff@boyceholleman.com
Counsel for the Defendants

*[signature]*
Edward L. Hamilton

*[signature]*
Barbara A. Hamilton

## Appendix A

## CERTIFICATION OF FAIR HOUSING TRAINING ATTENDANCE

I hereby certify that the undersigned individual attended fair housing training that I conducted on _____, 20\_\_\_.

_____
Trainer's Signature

_____
Trainer's Name

_____
Date

_____
Attendee's Signature

_____
Attendee's Name

_____
Attendee's Position

_____
Date

### Appendix B

### NONDISCRIMINATION POLICY

It is the policy of Indigo Investments, LLC, to comply with Title VIII of the Civil Rights Act of 1968, as amended, commonly known as the Fair Housing Act, by ensuring that apartments are available to all persons without regard to race, color, religion, national origin, disability, familial status (having children under 18), or sex. This policy means that, among other things, Indigo Investments, LLC, and all its agents and employees with the responsibility for renting, managing, or administering any dwellings at **[insert name of property]** must not discriminate in any aspect of the rental of dwellings against qualified applicants or tenants because of race or color. Such agents and employees may not:

    A.    Refuse to rent, refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, national origin, disability, familial status, or sex;

    B.    Discriminate against any person in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, national origin, disability, familial status, or sex;

    C.    Make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, national origin, disability, familial status, or sex; or

    D.    Represent to persons because of race, color, religion, national origin, disability, familial status, or sex that any dwelling is not available for inspection or rental when such dwelling is in fact so available.

Any agent or employee who fails to comply with this Nondiscrimination Policy will be subject to appropriate disciplinary action. Any action taken by an agent or employee that results in unequal service to, treatment of, or behavior toward tenants or actual or potential applicants on the basis of race, color, religion, national origin, disability, familial status, or sex may constitute a violation of state and federal fair housing laws. Any tenant or applicant who believes that any of the above policies have been violated by any owner, agent, or employee may contact the U.S. Department of Housing and Urban Development at 1-800-440-8091 x 2493, or the U.S. Department of Justice at 1-800-896-7743 x1 or 202-514-4713.

## Appendix C

## EMPLOYEE ACKNOWLEDGMENT

      I acknowledge that on _____, 20\_\_\_\_, I was provided copies of the Consent Decree entered by the Court in *United States v. Indigo Investments, LLC, et al.*, Civil Action No. 1:09-cv-376-LG-RHW (S.D. Miss.), and the Nondiscrimination Policy of Indigo Investments, LLC. I have read and understand these documents and have had my questions about these documents answered. I understand my legal responsibilities and shall comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Job Title

_____
Home Address

_____
Home Address Continued

_____
Home Telephone Number

_____
Date

## Appendix D

### LIST OF AGGRIEVED PERSONS AND MONETARY AMOUNTS

| Identified Aggrieved Person | Amount |
| --- | --- |
| William Batey | $3,000.00 |
| Brandon Boose | $2,000.00 |
| Charfonya Boose | $5,000.00 |
| Nicholas Cooper | $2,000.00 |
| Paula Gale | $4,000.00 |
| Mellisa Byrd Harrison | $2,000.00 |
| Jermille Johnson | $7,500.00 |
| Maggie Johnson | $7,500.00 |
| Beverly Jefferson | $4,500.00 |
| Mitchell Jefferson | $4,500.00 |
| Rose Robinson | $1,500.00 |
| Victoria Tucker | $1,500.00 |

### Appendix E

### FULL AND FINAL RELEASE OF CLAIMS

In consideration for the parties' agreement to the terms of the Consent Decree they entered into in the case of *United States v. Indigo Investments, LLC, et al.*, as approved by the United States District Court for the Southern District of Mississippi, and in consideration for the payment to me in, two installments, of the total amount of $_____, I,_____, do hereby fully release and forever discharge Indigo Investments, LLC, Edward L. Hamilton, and Barbara A. Hamilton (hereinafter "Defendants"), along with their insurers, attorneys, related companies, principals, predecessors, successors, assigns, affiliates, partners, directors, officers, agents, employers, shareholders, subsidiaries, employees, former employees, heirs, executors, and administrators and any persons acting under their respective direction or control from any and all fair housing claims set forth, or which could have been set forth, in the Complaint in this lawsuit that I may have had against any of them for any of Defendants' actions or statements related to those claims through the date of the entry of the Consent Decree.

Executed this \_\_\_\_\_ day of _____, 20\_\_\_\_.

_____
Signature

_____
Print Name

_____
Home Address

_____
Home Address Continued